UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

LAREDO DIVISION

United States District Court
Southern District of Texas
FILED

APR 1 7 2012

David J. Bradley, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| V. § | |
| § | |
| (1) KEVIN CORLEY, § | |
| AKA: KC; § | CRIMINAL NO. L-12-185-S |
| (3) CALVIN EPPS, § | |
| AKA: BEEF; § | |
| (4) MARCUS MICKLE, § | |
| AKA: JUNIOR; § | |
| (5) SAMUEL WALKER; § | |
| (6) SHAVAR DAVIS; § | |
| § | |
| § | |

## SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES THAT:

At the specified times and at all relevant times as stated in this indictment:

A.  INTRODUCTION

1.  Beginning from on or about January 2011 to on or about March 24, 2012, Defendants **KEVIN CORLEY, AKA: KC; CALVIN EPPS, AKA: BEEF; MARCUS MICKLE, AKA: JUNIOR; SAMUEL WALKER; SHAVAR DAVIS;** and conspired, confederated and agreed together with each other and other persons, both known and unknown to the Grand Jury, to possess with the intent to distribute cocaine and marijuana. Cocaine is a schedule II controlled substance while marijuana is a Schedule I controlled substance.

2.  Beginning from on or about January 7, 2012 to on or about March 24, 2012, Defendants **KEVIN CORLEY, AKA: KC; CALVIN EPPS, AKA: BEEF; MARCUS MICKLE,**

AKA: JUNIOR; SAMUEL WALKER; SHAVAR DAVIS; and  conspired, confederated, and agreed together with each other and with other persons, both known and unknown to the Grand Jury, to travel and to cause another to travel in interstate commerce and to use and to cause another to use a facility of interstate commerce, with intent that the murder of another person be committed, in violation of the laws of the State of Texas and of the United States, as consideration for the receipt of, and as consideration for a promise and agreement to pay, things of pecuniary value, to wit: $50,000 cash and five kilograms of cocaine.

3. On or about January 2011, **MARCUS MICKLE**, began to negotiate with Drug Enforcement Administration (DEA) undercover agents for the purchase of marijuana. The undercover agents told **MICKLE** they worked for los Zetas cartel. **MICKLE** initially proposed providing stolen firearms as a down payment for the marijuana. These negotiations continued for several months.

4. As a result of these negotiations, on or about September 14, 2011, **MICKLE** and **CALVIN EPPS** traveled to Laredo, Texas to meet in person the undercover agents, who they believed worked for los Zetas. At this meeting, **MICKLE** and **EPPS** proposed that the undercover agents provide them with 500 pounds of marijuana. **MICKLE** and **EPPS** would then distribute this marijuana in the Columbia, South Carolina area. **MICKLE** and **EPPS** also discussed the possibility of future drug shipments with the agents and stated that they would pay $350 per pound for the undercover agents to deliver the marijuana to the Columbia, South Carolina area.

5. During this meeting, on or about September 14, 2011, **MICKLE** and **EPPS** also stated that they would use a portion of the profits from the sale of the marijuana to purchase weapons for the undercover agents. They could acquire handguns, rifles, fully-automatic rifles, and grenades. **MICKLE** and **EPPS** stated that an acquaintance, **KEVIN CORLEY**, could provide military weapons.

6. On or about September 26, 2011, **MICKLE** and **EPPS** introduced the undercover agents to **KEVIN CORLEY** during a conference call. As part of this conference call, **KEVIN CORLEY** stated he was an active duty officer in the U.S. Army responsible for training soldiers. **KEVIN CORLEY** offered to provide tactical training for members of the cartel. Specifically, he offered to teach approaches, room clearing, security, and convoy security. **KEVIN CORLEY** also stated that he could purchase weapons for the cartel as long as he could destroy the serial numbers.

7. From on or about September 2011 to on or about December 2011, **KEVIN CORLEY** remained in contact with the undercover agents via telephone calls, text messaging, and emails. **KEVIN CORLEY** discussed stealing weapons from military posts, how to remove sear pins to make rifles fire faster, and other military tactics.

7. On or about December 2, 2011, the undercover agents received an Army Tactics Battle Book which it is believed **KEVIN CORLEY** mailed.

8. During a conversation, on or about December 23, 2011, **KEVIN CORLEY** offered to perform "wet work."

9. On or about January 7, 2012, **KEVIN CORLEY** traveled to Laredo, Texas to meet with undercover agents. During this meeting, **KEVIN CORLEY** stated that he could raid a ranch located at or near Laredo, Texas containing 20 kilograms of cocaine and conduct a contract killing there. **KEVIN CORLEY** proposed a $50,000 fee for this work but stated he would need to bring his own team. After further negotiation, **KEVIN CORLEY** stated he would accept a $50,000 fee and five kilograms of cocaine.

10. During this same meeting, on or about January 7, 2012, **KEVIN CORLEY** discussed **MICKLE** and **EPPS** planned purchase of 500 pounds of marijuana. **KEVIN CORLEY** stated he would provide security for the transport of the marijuana from Texas to South Carolina. **KEVIN**

**CORLEY**, Jerome Corley, **EPPS**, and **MICKLE** would drive two vehicles to escort the marijuana to its destination.

11. During this meeting, on or about January 7, 2012, **KEVIN CORLEY** also sold the undercover agents a ballistic vest and Army training manuals, among other items.

12. On or about January 14, 2012, **KEVIN CORLEY**, **MICKLE**, **EPPS**, and Jerome Corley traveled to Laredo, Texas with the intended purpose of escorting 500 pounds of marijuana to South Carolina. Undercover agents met the four at a truck stop and then escorted them to a parking lot where a utility box truck containing just over 500 pounds of marijuana, was located. **KEVIN CORLEY**, **MICKLE**, and **EPPS** then proceeded to assist in transferring the marijuana from the utility box truck to a tractor trailer. **KEVIN CORLEY**, **MICKLE**, **EPPS**, and Jerome Corley then drove north on Interstate 35 in front of the loaded tractor trailer. The loaded tractor trailer was pulled over in La Salle County, Texas, north of Laredo. Shortly after the stop, **KEVIN CORLEY** called one of the undercover agents and notified him that the tractor trailer had been pulled over, bundles had been removed from the trailer, and the driver had been arrested.

13. From on or about January 2012 to on or about March 2012, **KEVIN CORLEY**, **MICKLE**, and **EPPS** continued to call undercover agents regarding the seized marijuana load. They also discussed the possibility of future transactions, both narcotics and weapons related, with the undercover agents.

14. On or about March 5, 2012, **KEVIN CORLEY** met with an undercover agent in Colorado Springs, Colorado. At this meeting, **KEVIN CORLEY** delivered two AR-15 type (M-4) assault rifles with scopes, an airsoft assault rifle for training purposes, five allegedly stolen ballistic vests, and other equipment in exchange for $10,000.

15. During this meeting, on or about March 5, 2012, **KEVIN CORLEY** again discussed raiding a ranch containing 20 kilograms of cocaine and conducting a contract killing there. A date

of March 24, 2012 was set and a price of $50,000 and five kilograms was set. **KEVIN CORLEY** also stated that he had bought a new Ka-Bar knife to carve a "Z" into the victim's chest.

16. After this meeting, on or about March 2012, **KEVIN CORLEY, SAMUEL WALKER**, Jerome Corley, and **SHAVAR DAVIS** discussed this murder-for-hire-conspiracy. **KEVIN CORLEY, MICKLE, EPPS**, and                        also discussed the purchase of cocaine and marijuana. Specifically, they discussed the purchase of five kilograms of cocaine and 500 pounds of marijuana to be delivered to Columbia, South Carolina for $50,000. They also discussed the delivery of 300 pounds of marijuana to Summerville, South Carolina.

17. On or about March 24, 2012, **KEVIN CORLEY, SAMUEL WALKER**, Jerome Corley, and **SHAVAR DAVIS** traveled to Laredo, Texas. This was the date **KEVIN CORLEY** had agreed to bring a team to Laredo, Texas to raid a ranch containing 20 kilograms of cocaine and to conduct a contract killing on behalf of los Zetas drug cartel. At approximately 12:35 p.m., **KEVIN CORLEY, SAMUEL WALKER**, Jerome Corley, and **SHAVAR DAVIS** met with undercover agents and discussed the location of the intended victim, the logistics of performing the contract kill, and their respective roles. Each person confirmed they knew the group was to receive $50,000 and five kilograms of cocaine upon the completion of these tasks.

18. On or about March 24, 2012, a search of the co-conspirators vehicle revealed two semi-automatic rifles with scopes, one bolt-action rifle with a scope and bipod, one hatchet, one K-Bar knife, .223 caliber ammunition, and .300 caliber ammunition.

19. On or about March 24, 2012, undercover agents also met with **CALVIN EPPS** and **MARCUS MICKLE** in Columbia, South Carolina at a motel parking lot. During this meeting, **EPPS** and **MICKLE** discussed the pre-arranged purchase of five kilograms of cocaine and 500 pounds of marijuana. **EPPS** and **MICKLE** were to provide $50,000 as an initial payment for the cocaine and marijuana. **MICKLE** stated that he did not have the $50,000 with him and that the

undercover agents would need to go out to the country, away from town, to conduct the transaction with the buyer of the narcotics. The undercover agents then asked **EPPS** and **MICKLE** to come inside to discuss the situation with their boss. During the meeting, **EPPS** had a loaded Raven Arms Model MP-25 handgun in his right cargo pants pocket. **MICKLE** had a loaded Springfield Armory XD-40 handgun in the right side waistband of his pants as well as a loaded spare magazine.

    20.    On or about March 24, 2012, undercover agents also met with _____ at or near Interstate 26 in Summerville, South Carolina at a restaurant. Prior to the meeting _____ called the undercover agents to ask how the marijuana was packaged and the size of the bundles. Shortly after this conversation, _____ arrived at the restaurant driving a white van with _____ spoke with the undercover agents about the payment for the marijuana. _____ told agents he was there to test the quality of the marijuana that _____ was supposed to pick up.

## COUNT ONE

### (Conspiracy to Distribute Controlled Substances)

21. The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 20 of the Indictment, and further alleges:

22. From on or about September 14, 2011 to on or about March 24, 2012, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, **Defendants,**

**KEVIN CORLEY, AKA: KC;
CALVIN EPPS, AKA: BEEF;
MARCUS MICKLE, AKA: JUNIOR;
SAMUEL WALKER;
SHAVAR DAVIS;**

did knowingly and intentionally conspire and agree together and with each other and with other persons known and unknown to the Grand Jurors to possess with intent to distribute a controlled substance. This violation involved:

(a) a quantity of 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance; and

(b) a quantity of 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A) & (B).

## COUNT TWO

**(Possession with the Intent to Distribute in Excess of 100 Kilograms of Marijuana)**

23. The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 20 of the Indictment, and further alleges:

24. On or about January 14, 2012, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, **Defendants,**

**KEVIN CORLEY, AKA: KC;**
**CALVIN EPPS, AKA: BEEF;**
**and MARCUS MICKLE, AKA: JUNIOR;**

did knowingly and intentionally possess with intent to distribute a controlled substance. This violation involved a quantity of 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), and Title 18, United States Code, Section 2.

## COUNT THREE

### (Conspiracy to Commit Murder for Hire)

25. The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 20 of the Indictment, and further alleges:

26. From on or about January 7, 2012 to on or about March 24, 2012, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, **Defendants,**

**KEVIN CORLEY, AKA: KC;**
**CALVIN EPPS, AKA: BEEF;**
**MARCUS MICKLE, AKA: JUNIOR;**
**SAMUEL WALKER;**
**SHAVAR DAVIS;**

traveled and caused themselves and each other and other persons, known and unknown to the Grand Jury, to travel in interstate commerce from at or near Colorado Springs and Denver, Colorado; Columbia, South Carolina; Saginaw, Texas, and elsewhere yet unknown, to Laredo, Texas and elsewhere, and used and caused another to use a facility of interstate commerce, to wit: cellular telephone communication and the internet, and did conspire and agree together with each other and with other co-conspirators, known and unknown to the Grand Jury, with intent that the murder of another person be committed, in violation of the laws of the State of Texas and of the United States, as consideration for the receipt of, and as consideration for a promise and agreement to pay, things of pecuniary value, to wit: $50,000 and five kilograms of cocaine, and in order to effect the object of the conspiracy, the said Defendants did:

1. On or about March 1, 2012, **Kevin Corley**, located at or near Colorado Springs, Colorado, called **Calvin Epps**, located at or near Columbia, South Carolina, and asked **Epps** for assistance in obtaining a .50 caliber rifle.

2. On or about March 5, 2012, from at or near Columbia, South Carolina, **Calvin Epps** did send a Western Union Wire Transfer of approximately $1,300 to **Kevin Corley** in Colorado Springs, Colorado.

3. On or about March 5, 2012, at or near Colorado Springs, Colorado, **Kevin Corley** did receive and draw upon a Western Union Wire Transfer of approximately $1,300 sent from **Calvin Epps** at or near Columbia, South Carolina.

4. On or about March 5, 2012, at or near Colorado Springs, Colorado, **Kevin Corley** purchased two M-4 .223 caliber rifles.

5. On or about March 17, 2012, at or near Denver, Colorado, **Shavar Davis** spoke with **Kevin Corley**, located at or near Colorado Springs, Colorado, using a cellular telephone and discussed whether the murder-for-hire and drug trafficking deal was still on.

6. On or about March 17, 2012, from at or near Saginaw, Texas,             spoke to **Kevin Corley** located at or near Colorado Springs, Colorado, using a cellular telephone, and discussed storing firearms at             house after the murder-for-hire was complete.

7. On or about March 19, 2012, **Marcus Mickle** located at or near Columbia, South Carolina, spoke to **Kevin Corley**, located at or near Colorado Springs, Colorado, using a cellular telephone, and discussed the shipment of 500 pounds of marijuana and 5 kilograms of cocaine to **Marcus Mickle** in Columbia, South Carolina.

8. On or about March 20, 2012, at or near Colorado Springs, Colorado, **Kevin Corley** purchased an airline ticket for another person to travel from Columbia, South Carolina, to Colorado Springs, Colorado, the date of departure and arrival for which was scheduled for on or about March 21, 2012.

9. On or about March 22, 2012, at or near Colorado Springs, Colorado, **Kevin Corley** purchased cartridges for a .300 Weatherby Magnum.

10. On or about March 22, 2012, at or near Colorado Springs, Colorado, **Kevin Corley** rented a Volkswagen Jetta automobile.

11. On or about March 22, 2012, **Kevin Corley** traveled along an interstate highway by automobile and picked up **Shavar Davis** at **Shaver Davis'** house in Denver, Colorado.

12. On or about March 23, 2012, at or near Colorado Springs, Colorado, **Kevin Corley**, **Shavar Davis**, and **Samuel Walker** loaded one (1) Carbon 15 .223 caliber rifle; one (1) A-15 .223 caliber rifle; one (1) .300 Weatherby Magnum rifle, with scope and retractable bi-pod; one (1) box of 20 cartridges of .300 Weatherby Magnum ammunition; one (1) bag containing ninety (90) rounds of .223 caliber ammunition; twelve (12) 30-round capacity magazines; one (1) hatchet; one (1) Ka-Bar knife; two (2) camouflage backpacks, and numerous articles of personal property, into a Volkswagen Jetta automobile.

13. On or about March 23, 2012, **Kevin Corley, Shavar Davis**, and **Samuel Walker** traveled by means of a Volkswagen Jetta automobile from Colorado Springs, Colorado, along interstate highways through the State of New Mexico and into the State of Texas and on to San Antonio.

14. On or about March 23, 2012, at or near San Antonio, Texas, **Kevin Corley, Shavar Davis**, and **Samuel Walker** stayed the night at a motel.

15. On or about March 24, 2012, from at or near San Antonio, Texas, **Kevin Corley, Shavar Davis**, and **Samuel Walker** traveled in a Volkswagen Jetta automobile along Interstate Highway 35 to Laredo, Texas.

All in violation of Title 18, United States Code, Section 1958(a).

## COUNT FOUR

### (Use and Carrying a Firearm During and in Relation to and Possession of a Firearm in Furtherance of a Crime of Violence or Drug Trafficking Crime)

27. The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 20 of the Indictment, and further alleges:

28. On or about March 24, 2012, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, **Defendants,**

> **KEVIN CORLEY, AKA: KC;**
> **CALVIN EPPS, AKA: BEEF;**
> **MARCUS MICKLE, AKA: JUNIOR;**
> **SAMUEL WALKER;**
> **SHAVAR DAVIS;**

and other co-conspirators, known and unknown to the Grand Jury, aiding and abetting each other, did knowingly and intentionally:

(a) carry and use a firearm, that is an assault-type rifle and a .300 Weatherby Magnum rifle, during and in relation to; and

(b) possess a firearm, that is an assault-type rifle and a .300 Weatherby Magnum rifle, in furtherance of:

(1) a crime of violence, that is conspiracy to commit murder for hire in violation of Title 18, United States Code, Section 1958(a) as set forth in Count Three of this indictment; and

(2) a drug trafficking crime, that conspiracy to possess with intent to distribute a controlled substance in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A) & (B) as set forth in Count One this indictment.

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and (B) and Title 18, United States Code, Section 2.

## COUNT FIVE

**(Conspiracy to Use and Carry a Firearm During and in Relation to and Possession of a Firearm in Furtherance of a Crime of Violence or Drug Trafficking Crime)**

29.  The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 20 of the Indictment, and further alleges:

30.  Between on or about September 14, 2011 to on or about March 24, 2012, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, **Defendants,**

**KEVIN CORLEY, AKA: KC;
CALVIN EPPS, AKA: BEEF;
MARCUS MICKLE, AKA: JUNIOR;
SAMUEL WALKER;
SHAVAR DAVIS;**

and other co-conspirators, known and unknown to the Grand Jury, did knowingly and intentionally conspire and agree together and with each other and with other persons known and unknown to the Grand Jury to:

(a)  carry and use a firearm, that is an assault-type rifle and a .300 Weatherby Magnum rifle, during and in relation to; and

(b)  possess a firearm, that is an assault-type rifle and a .300 Weatherby Magnum rifle, in furtherance of :

(1) a crime of violence, that is conspiracy to commit murder for hire in violation of Title 18, United States Code, Section 1958(a) as set forth in Count Three of this indictment; and

(2) a drug trafficking crime, that is, conspiracy to possess with intent to distribute a controlled substance in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A) & (B) as set forth in Count One this indictment.

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and (B).

A TRUE BILL:

**ORIGINAL SIGNATURE ON FILE**

KENNETH MAGIDSON
UNITED STATES ATTORNEY

*/s/ Roberto Ramirez*
ROBERTO RAMIREZ
Assistant United States Attorney

| __LAREDO__ DIVISION | **CRIMINAL DOCKET** | NO. __12-CR-185-S__ |
|---|---|---|
| FILE: 11-25396     MAG #: L- | | |
| __INDICTMENT__ | Filed: _____ | Judge: _____ |

UNITED STATES OF AMERICA

VS.
(1) KEVIN CORLEY
AKA: KC
(3) CALVIN EPPS
AKA: BEEF
(4) MARCUS MICKLE
AKA: JUNIOR
(5) SAMUEL WALKER
(6) SHAVAR DAVIS

ATTORNEYS:
KENNETH MAGIDSON, USA
ROBERTO RAMIREZ, AUSA ; JODY YOUNG, AUSA

|  | Appt'd | Private |
|---|---|---|

**CHARGE:**
**(TOTAL)**
**COUNTS:**
**( 5 )**

Ct. 1: Conspiracy to possess with intent to distribute 5 kilograms or more of cocaine & 100 kgs or more of marijuana
[21 USC 846, 841(a)(1) & 841(b)(1)(A) & (B)]
Ct. 2: Possess with intent to distribute 100 kilograms or more of marijuana
[21 USC 841(a)(1), 841(b)(1)(B) & 18 USC 2]
Ct. 3: Conspiracy to commit murder-for-hire
[18 USC 1958(a)]
Ct. 4: Possess a firearm in furtherance a drug trafficking crime & crime of violence
[18 USC 924(c)(1)(A) & (B) & 18 USC 2]
Ct. 5: Conspiracy to Posses a firearm in furtherance of a drug trafficking crime & a crime of violence
[18 USC 924(o), (c)(1)(A) & (B)]

**PENALTY:**
Ct. 1:   10 Yrs and/or $10 MILLION, $100 Spec Assessment
         5 YRS MIN TERM OF SUPERVISED RELEASE
Ct. 2:   5 to 40 Yrs. and/or $5 MILLION, $100 Spec Assessment
         4 YRS MIN TERM OF SUPERVISED RELEASE
Ct. 3:   10 yrs and/or $250,000.00, $100 Spec Assessment
         3 YRS TERM OF SUPERVISED RELEASE
Ct. 4:   Minimum 10 yrs to Life and/or $250,000.00, $100 Spec Assessment
         5 YRS TERM OF SUPERVISED RELEASE
Ct. 5:   20 yrs and/or $250,000.00, $100 Spec Assessment
         3 YRS TERM OF SUPERVISED RELEASE

In Jail:

On Bond:

No Arrest:

NAME & ADDRESS
of Surety:

**PROCEEDINGS:**